Alonzo L. SMITH, Plaintiff,

v.

Paul GLIKIN, d/b/a Beltone Hearing
Center, Defendant.

Civ. A. 10715.

United States District Court
S. D. Texas,
Houston Division.

July 14, 1958.

Vinson, Elkins, Weems & Searls, Houston, Tex. (Joe E. Edwards, J. Vincent Martin, and M. Harvey Gay), Houston, Tex., for plaintiff.

Baker, Botts, Andrews & Shepherd, Houston, Tex. (Garrett R. Tucker, Jr. and Frank B. Pugsley), Houston, Tex., and Will Freeman and Sheldon Witcoff, Chicago, Ill., for defendant.

INGRAHAM, District Judge.

This is a suit for patent infringement, injunction and accounting for profits and damages and assessment of costs brought by Alonzo L. Smith, plaintiff, against Paul Glikin, d/b/a Beltone Hearing Center, defendant. Plaintiff claims infringement of claims 1, 3 and 6 of the Smith Patent No. 2,765,373, issued October 2, 1956. Defendant denies infringement and takes the position that, if the claims are interpreted to be of sufficient scope to encompass defendant's structures, said claims are invalid in view of the prior art relied upon by defendant in this case.

This suit was instituted against the seller Glikin but the defense of such suit has been under the control of the Beltone Hearing Aid Company, manufacturer of the defendant's hearing aid eyeglasses, so that the real defendant, in fact, is the Beltone Hearing Aid Company.

The patent in suit (Pl. Ex. 1) relates to a hearing aid eyeglasses and provides a structure wherein a complete hearing aid unit is housed in either one or both templar members of the structure so that the operative components of the hearing aid unit are completely independent of the lens-frame and lenses of the eyeglasses.

Claims 1, 3 and 6 of the patent are directed to the particular combination in which the operative components of the complete hearing aid unit are mounted in at least one templar member of the hearing aid eyeglasses structure. These claims are of sufficient scope to cover the various physical forms which involve the novel combination.

The physical models of defendant's "Hear-N-See" and "Slimette" hearing aid eyeglasses are in evidence as plaintiff's Exhibits 6 and 7. These hearing aid eyeglasses are manufactured by Beltone Hearing Aid Company.

Defendant's hearing aid eyeglasses include a lens-frame having the lenses mounted therein with two templar members having their forward portions attached to the lens-frame. Within one of the side templar members, the defendant mounts a complete hearing aid. The defendant's device employs a hearing aid circuit which includes transistors but the claims in issue are not restricted to any particular circuit or to any specific hearing aid unit.

The evidence presented at the trial establishes that Smith was the first to provide the particular novel combination which locates the operative elements of

the complete hearing aid unit in such position with respect to the lenses and lens-frame of the eyeglasses that said operative elements are, in effect, separate and independent from the lenses. The hearing aid unit may thus be fitted independently by the hearing aid specialist without affecting the lenses and the fitting of the lenses by the optician does not in any way affect the hearing aid unit. This important advantage, which stems from Smith's contribution to the art, made possible the construction of the first practical and commercially acceptable hearing aid eyeglasses.

No one, prior to the filing of the plaintiff's patent in suit, taught the particular combination defined by the claims of the patent. No prior worker recognized the importance or necessity of the operative elements of the complete hearing aid unit being entirely independent and separate of the lenses and lens-frame.

■ As to the Bachmann abandoned application (Def. Ex. 22), it cannot be relied upon as prior art because, being an abandoned application, it is not prior art. Walker on Patents, Dellers Edition, Vol. I, p. 279. Brown v. Guild (Brown v. Selby [corn-planter patent]), 23 Wall. 181, 211, 90 U.S. 181, 211, 23 L.Ed. 161. Application of Schlittler, 1956, 43 C.C. P.A., Patents, 986, 234 F.2d 882, 883.

■ Even if the Bachmann abandoned application were admissible as prior art, the application itself refutes any contention that it discloses the particular combination of the Smith patent because the complete hearing aid is not contained in the templar member of the eyeglasses.

■ It is clear that patents involving new combinations are to be adjudged on determination of whether the combination is new, not on whether the elements which go to make up the combination are individually old in the art. Williams Mfg. Co. v. United Shoe Mach. Corp., 316 U.S. 364, 367, 62 S.Ct. 1179, 86 L.Ed. 1537, 1541; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 443, 31 S.Ct. 444, 55 L.Ed. 527, 535; Leeds & Catlin Co. v. Victor

Talking Mach. Co., 213 U.S. 325, 332, 29 S.Ct. 503, 53 L.Ed. 816, 819; Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783, 790, 791; Bryan v. Sid W. Richardson, Inc., 5 Cir., 254 F.2d 191.

■ The most pertinent patents relied on by the defendant were before the Patent Office and were thoroughly considered before the Smith claims were allowed. Where the Patent Office has considered the most pertinent prior art, the presumption of validity, which attaches to a patent when issued, is greatly strengthened. That is the situation in this case. Southern States Equipment Corp. v. USCO Power Equipment Corp., 5 Cir., 1953, 209 F.2d 111, 118.

■ Defendant attempts to jump the gap between validity and invalidity by dismissing what Smith has done as obvious. The question of whether or not a claimed combination is "obvious" must be determined in the light of all the surrounding facts and circumstances. Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034; Sel-O-Rak Corporation v. Henry Hanger and Display Fixture Corporation of America, 5 Cir., 1956, 232 F.2d 176; Pointer v. Six Wheel Corporation, 9 Cir., 1949, 177 F.2d 153, 160.

■ The authorities are clear that evaluation of the patent disclosure should not be viewed by hindsight. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 434, 31 S.Ct. 444, 55 L.Ed. 527, 531.

The facts and circumstances of this case establish that the novel combination of the Smith patent was not obvious.

Defendant's whole theory upon which defendant's contention of non-infringement is based revolves about the term "eyeglasses frame" as used in the claims.

■ In order to determine what the term "eyeglasses frame" really means in the claims, it is only necessary to refer to the patent specification where the patentee clearly defines what is meant by that term. As the courts have held, a patent is its own dictionary and the

patentee may define and designate the various elements of his invention in any desired manner. Nordberg Mfg. Co. v. Woolery Mach. Co., 7 Cir., 1935, 79 F.2d 685, 692.

The specification of the patent in suit makes it clear that the term "eyeglasses frame", as used in the patent, simply means the lens-frame which carries the lenses. Reference is made to column 3, lines 20 to 27.

In all claims, the only frame referred to is the eyeglasses frame or the eyeglasses-lens frame which can have only one meaning—the lens frame 3 in which the lenses are mounted.

■ Construing the claims 1, 3 and 6 in the light of the clear, unambiguous definition, both in the patent and in the Beltone manuals, of the term "frame" and considering the claims with respect to the clear meaning of their words, said claims 1, 3 and 6 are clearly infringed by defendant's structure.

Defendant contends that claims 1, 3 and 6 are not applicable to any of the physical forms of Smith's invention except Figure 13. Defendant's position in this respect is based upon the premise that the terms "eyeglasses frame" and "eyeglasses-lens frame", as used in the claims, mean a complete pair of eyeglasses including both the front lens frame and the side templar members. Claims 1, 3 and 6 are generic claims covering both physical forms of the same invention and when the terms "eyeglasses frame" and "eyeglasses-lens frame" are construed as they must be in the light of their clear meaning, said claims read squarely upon the physical form of Figure 2 and apply equally well to defendant's unit.

■ In a further attempt to limit the scope of the claims of the Smith patent, defendant contends that by reason of what transpired in the Patent Office, plaintiff is estopped to construe claims 1, 3 and 6 to cover any structure other than the so-called attachment type, shown in Figure 13. The doctrine of file wrapper estoppel is well recognized by the courts and is applied where a patentee, having been required to give up certain subject matter in order to obtain his patent, later attempts to construe the allowed claims to recapture that which he surrendered.

■ Plaintiff is not attempting to recapture any subject matter which was specifically given up during the prosecution of the application. Claims 1, 3 and 6 find response, exactly as worded, in the defendant's structure, and there is no attempt on plaintiff's part to enlarge the plain meaning of the words of the claims. New York Scaffolding Co. v. Whitney, 8 Cir., 1915, 224 F. 452, 462; Lawrence v. Hunt Tool Co., D.C., 142 F. Supp. 329, affirmed 5 Cir., 242 F.2d 347, certiorari denied 354 U.S. 910, 77 S.Ct. 1296, 1 L.Ed.2d 1428.

■ Defendant introduced Exhibit 34a for the purpose of relying upon certain pencil notations which appear at the upper portion of page 1 of the exhibit. No proofs have been offered as to who made these notations, why they were made or when they were made. Therefore, the pencil notations appearing on the exhibit are pure hearsay and are wholly inadmissible for any purpose. The patentee had no knowledge of the notations and did not agree or acquiesce to the truth thereof. Under such circumstances, no estoppel against the patentee Smith is created and he is not bound by them.

■ Furthermore, the unentered amendment Exhibit 34a was presented to the Patent Office after the allowance of claims 32 to 34 which became claims 1 to 3 of the patent. Therefore, the notations appearing on page 1 were obviously made subsequent to allowance of claims 1 to 3 and can, in no event, be considered to change the clear meaning of these claims. Diamond Match Co. v. Ruby Match Co., C.C.N.J.1904, 127 F. 341, 345.

■ During the trial, defendant presented evidence as to the commercial availability of transistors and contended that an eyeglasses hearing aid combina-

tion such as defined in the Smith patent could not be constructed without the use of transistors and other small parts. In substance, the defendant is saying that because Smith elected to illustrate a well-known hearing aid circuit including vacuum tubes in his patent, said patent cannot cover equivalent elements used in the same way in the same combination because such equivalent elements are smaller.

Although transistors may not have been available on a large commercial scale, as they are today, they were in the public knowledge and were being used in industry. The Scaife patent 2,613,282, upon which defendant relies, refutes defendant's contention that transistors were not known at the time of filing of the Smith application because Scaife shows transistors in a hearing aid circuit.

Also defendant's witness Peters established that vacuum tubes and transistors are full equivalent, so far as function is concerned, in hearing aid amplifier circuits (R. p. 70; 309). The claims are not restricted to any particular type of hearing aid circuit and the substitution of one type of unit (the hearing aid transistor unit) for another type of unit (the hearing aid vacuum tube unit) where the elements are equivalent in a particular combination does not avoid infringement. Imhaeuser v. Buerk, 101 U.S. 647, 656, 25 L.Ed. 945; Southern Saw Service, Inc., v. Pittsburgh-Erie Saw Corp., 5 Cir., 239 F.2d 339.

I find plaintiff's patent valid and infringed and file the following as Findings of Fact and Conclusions of Law:

## Findings of Fact

### I

Plaintiff is the owner of the entire right, title and interest in and to the A. L. Smith Patent No. 2,765,373, issued October 2, 1956, entitled "Hearing Aid, Construction and Support Therefor."

### II

Defendant is an individual and conducts his business under the name Bel-tone Hearing Center in Houston, Texas, and has sold, throughout the southern district of Texas, the hearing aid eyeglasses identified as the "Hear-N-See" model (Pl. Ex. 6) and the "Slimette" model (Pl. Ex. 7).

### III

The invention of the Smith patent discloses and claims a combination hearing aid eyeglasses in which all of the operative components of the complete hearing aid unit are mounted in either one or both templar members separate and independent from the lenses or the lens-frame of the eyeglasses.

### IV

The concept of the Smith patent provides the important practical advantage of permitting the hearing aid to be fitted to the user by the hearing aid specialist without interfering with the lenses of the eyeglasses and of also permitting the fitting of the lenses to be accomplished by the optician without in any way affecting the operative components of the hearing aid unit. It is this practical advantage which makes possible the construction of a commercially acceptable hearing aid eyeglasses.

### V

None of the disclosures of the prior patents and prior art relied upon by the defendant suggest or disclose a combination hearing aid eyeglasses in which all of the operative components of the complete hearing aid unit are mounted in either one or both templar members separate and independent from the lenses or the lens-frame of the eyeglasses. Therefore, none of these disclosures have the practical advantage of permitting the hearing aid specialist and the optician to perform their respective functions without interfering with each other.

### VI

At the time that plaintiff filed the application for the Smith patent in suit, there were no hearing aid eyeglasses of any kind on the market and available to the public.

## VII

Plaintiff was not in the business of manufacturing hearing aids and after filing his application for the patent in suit, he attempted to interest various manufacturers in the invention but was unsuccessful. Thereafter, plaintiff decided to test the public acceptance of hearing glasses and, under the firm name of "Soundcraft", plaintiff promoted the sale of a type of hearing aid eyeglasses which, although not the structure of the patent in suit, was of a kind sufficient for plaintiff to determine whether or not the public would accept eyeglasses of a different appearance if they included the advantages of a hearing aid. This early type of hearing aid eyeglasses was the first hearing aid eyeglasses ever offered to the public by anyone and plaintiff was the pioneer in the promotion of the sale of hearing aid eyeglasses in the United States.

## VIII

The hearing aid eyeglasses sold by defendant are manufactured by the Beltone Hearing Aid Company of Chicago. The Beltone Hearing Aid Company became aware of plaintiff's activity with respect to his early type of hearing aid eyeglasses and actually assisted plaintiff in the promotion of the sale thereof. At that time the Beltone Hearing Aid Company was not manufacturing hearing aid eyeglasses of any type. Through correspondence with plaintiff, the Beltone Hearing Aid Company received a complete disclosure from plaintiff in November, 1954, of the subject matter of the patent in suit. About 15 months later Beltone Hearing Aid Company announced to the public its manufacture of one form of the hearing aid eyeglasses which are charged to be an infringement of the patent in suit. The interest of the Beltone Hearing Aid Company in hearing aid eyeglasses was initiated by plaintiff's disclosure to it of the subject matter of the patent in suit in November, 1954.

## IX

Transistors were known at the time that the patent in suit was filed and the particular transistor preferred in modern hearing aid units has been available since the fall of 1952. Even though these transistors were readily available to the hearing aid industry since 1952, no manufacturer produced a hearing aid eyeglasses until 1955 which was after plaintiff had fully disclosed his new combination to the industry in November, 1954.

## X

The acceptability and commercial success of hearing aid eyeglasses is dependent upon the new combination disclosed in the Smith patent and is not dependent upon the size of the component parts of the hearing aid unit. Although smaller component parts naturally permit a smaller hearing aid unit to be constructed, the basis of Smith's advance in the art is not in the size of any component of the hearing aid unit but resides in the particular combination which locates all of the operative components of the hearing aid unit away from the lenses and lens-frame of the eyeglasses.

## XI

The patent in suit illustrates a hearing aid circuit which includes vacuum tubes while the defendant's accused structure employs a hearing aid circuit employing transistors. The circuit employing transistors functions in the same way as the circuit employing vacuum tubes and one is the full equivalent of the other. Claims 1, 3 and 6 of the patent in suit do not define any particular type of hearing aid circuit and cover both tube and transistor type circuits.

## XII

Throughout the prosecution of the patent in suit in the Patent Office, plaintiff persistently and continuously contended that claims 1, 3 and 6 of the patent were directed to the particular combination in which the operative components of the hearing aid unit were mounted in one or both templar members and that said claims encompass the various physical forms of this combination as illustrated in the drawings and specification of the patent. Plaintiff never

at any time acquiesced or agreed that the scope of the claims and particularly claims 1, 3 and 6 were limited to any one physical form or embodiment. The doctrine of file wrapper estoppel is not applicable under these circumstances to limit the construction of claims 1, 3 and 6 to the specific embodiment of the Smith invention illustrated in Figure 13 of the drawings.

### XIII

During the prosecution of the patent in suit in the Patent Office, the Patent Office considered the most pertinent prior art and allowed the claims of the patent over such art.

### XIV

The terms "eyeglasses frame" and "eyeglasses lens-frame" as used in claims 1, 3 and 6, are clearly defined in the patent specification as meaning the lens-frame and these terms, as used in the claims, do not include the templar members or side bow portions.

### XV

The proposed amendment (Pl. Ex. 34a) was never filed with the Patent Office as a part of the record of the patent in suit; not being a part of the file history of the Smith patent, this unfiled amendment cannot affect the interpretation to be given claims 1, 3 and 6 of the Smith patent. The handwritten notations on page 1 of this proposed amendment are hearsay and are not admissible for any purpose.

### XVI

The language of claims 1, 3 and 6 is clear and unambiguous. The elements called for by claims 1, 3 and 6 are present in the "Hear-N-See" and "Slimette" models of hearing aid eyeglasses sold by the defendant Glikin and manufactured by the Beltone Hearing Aid Company and claims 1, 3 and 6 are infringed.

### XVII

The Beltone Hearing Aid Company, manufacturer of the defendant's hearing aid eyeglasses, assumed the defense of this suit, the evidence showing that Beltone selected counsel for the defense, financed the litigation and controlled the same in all respects.

### Conclusions of Law

#### I

This court has jurisdiction of the parties and of all issues raised by the pleadings in this action.

#### II

Plaintiff has the right, title and interest in and to the Smith patent No. 2,765,373.

#### III

Consideration of the best prior art by the Patent Office during the prosecution of the application from which the Smith patent matured strengthens the presumption of validity of said Smith patent.

#### IV

The prior art cited by defendant does not anticipate claims 1, 3 and 6 of the Smith patent No. 2,765,373.

#### V

The Bachmann abandoned application (Defendant's Ex. 2) is not prior art against the Smith patent.

#### VI

The proposed unfiled amendment (Defendant's Ex. 34a) is not a part of the file history of the Smith patent No. 2,765,373 and cannot be considered in construing the claims of the patent as finally allowed.

#### VII

Claims 1, 3 and 6 of the Smith patent No. 2,765,373 are valid as directed to a new combination.

#### VIII

The clear unambiguous language of claims 1, 3 and 6 is applicable to the defendant's "Hear-N-See" and the "Slimette" models manufactured by Beltone Hearing Aid Company and sold by defendant and claims 1, 3 and 6 of the Smith patent are infringed by these structures.

Counsel will draft and submit decree accordingly.