BENTHALL MACH. CO. v. NATIONAL MACH. CORPORATION, Inc.

SAME v. VIRGINIA–CAROLINA PEANUT PICKER CO.

SAME v. DEBNAM et al.

(District Court, E. D. Virginia. April 2, 1915.)

Nos. 1760, 1759, 1762.

1. PATENTS ☞289—SUIT FOR INFRINGEMENT—LACHES.

Unless under very special circumstances, a court should not sustain the defense of laches in an infringement suit which was commenced within the statutory period of limitation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 467–469; Dec. Dig. ☞289.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. PATENTS ⊚�незнаю66—ANTICIPATION—INOPERATIVE DEVICE.

Machines which, although patented, were not practically operative and were abandoned after slight use, are not anticipations which will invalidate a subsequent patent for an operative and successful machine.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. ⊚⟩66.]

3. PATENTS ⊚⟩81—ANTICIPATION—BURDEN OF PROOF.

A defendant has the burden of proof to establish anticipation of a patent by prior use with all the presumptions against him.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 104; Dec. Dig. ⊚⟩81.]

4. PATENTS ⊚⟩26—INVENTION—NEW COMBINATION OF OLD ELEMENTS.

That all of the elements of a patented combination were old does not negative invention, where they were not found in the same structure.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⊚⟩26.]

5. PATENTS ⊚⟩328—VALIDITY AND INFRINGEMENT—PEANUT PICKER AND STEMMER.

The Ferguson & Benthall patent, No. 808,442, for a peanut picker, and the Benthall patent, No. 890,401, for a peanut stemmer, were not anticipated and disclose patentable invention; also, *held* infringed.

6. PATENTS ⊚⟩328—VALIDITY AND INFRINGEMENT—PEANUT PICKER AND STEMMER.

The Jones patent, No. 908,271, for a combined peanut picker and stemmer, *held* void for anticipation by the prior use for several months of an unpatented machine; also, *held* not infringed if conceded validity.

7. PATENTS ⊚⟩90—PERSONS ENTITLED TO PATENT—PRIORITY OF INVENTION.

To entitle one to a patent he must have been not only an original, but the first, inventor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 113–120; Dec. Dig. ⊚⟩90.]

In Equity. Suits by the Benthall Machine Company against the National Machine Corporation, Incorporated, against the Virginia-Carolina Peanut Picker Company, and against Thomas H. Debnam and Walter C. Ferguson, partners trading as the Ferguson Manufacturing Company. On final hearing. Decrees for complainant in part.

The complainant, the Benthall Machine Company, the owner of the Ferguson & Benthall patent, No. 808,442, for a peanut picker, of the Benthall patent, No. 890,401, for a peanut stemmer, and of the Jones patent, No. 908,271, for a peanut picker and stemmer combined, filed its bills in equity in these causes (hereafter for convenience referred to as causes Nos. 1, 2, and 3); No. 1 being against the National Machine Corporation, Incorporated, No. 2 against the Virginia Carolina Peanut Picker Company, and No. 3 against Thomas H. Debnam and Walter C. Ferguson, otherwise known as the Ferguson Manufacturing Company.

The complainant, and the defendants the National Machine Corporation and the Virginia-Carolina Peanut Picker Company are corporations duly organized under the laws of the state of Virginia, and Debnam and Ferguson are copartners trading as the Ferguson Manufacturing Company, and each doing business in this judicial district.

The subject-matters of the patents in suit relate to machines for picking peanuts from vines, and for removing stems from peanuts after they are picked. The peanut picking mechanism operates first upon the vines, picking and removing the peanuts therefrom, which thereafter, and in a continuous operation, are delivered to the stemming mechanism, which removes the stems from the peanuts, and the peanuts are delivered by the machine practically in

marketable condition; that is to say, that the patents in suit involve the manufacture of peanut picking and stemming machines by the complainant, embodying and containing the peanut picking apparatus under the Benthall & Ferguson patent, and the stemming apparatus under the Benthall patent conjointly.

The three separate causes, as they relate generally to the same subject-matter, and as one patent is involved in all the suits, and another in two of the suits, and the defenses attacking the validity of the patents are generally the same, are for convenience heard together.

In the first suit, against the National Machine Company, the complainant alleges infringement of claims 4 and 5 of the Benthall patent, which are as follows:

"4. In a peanut stemmer, a stemming device comprising a disk provided on its periphery with a plurality of teeth, said teeth being inclined to radii of the disks, and having their front edges straight, the edges of the adjacent teeth meeting at an acute angle, and the points of the teeth being nearer the centers of the disks than the heels thereof, and the spaces between the teeth being of a width at the widest part approximately equal to that of the teeth.

"5. In a peanut stemmer, a stemming device comprising a disk provided on its periphery with a plurality of spaced teeth having straight front edges, the heels of the teeth being farther from the centers of the disk than the points thereof, whereby to form a guard for the point, and the edges of the adjacent teeth meeting at an acute angle, whereby to exert a wedging action on the stem."

(These claims relate to an improved stemming disk or saw.) Also, the infringement of claims 8 and 9 of the Jones patent, as follows:

"8. In a device of the class described, a peanut stemmer comprising a hollow cylindrical rotary drum having circumferential slots through its wall, rotary toothed wheels extending into said drum through said slots, means for supplying peanuts at one end of the drum, and means for discharging said peanuts at the other end of the drum.

"9. In a device of the class described, a peanut stemmer comprising a hollow cylindrical rotary drum having circumferential slots through its wall, a shaft parallel with said drum carrying stemming wheels extending into the slots of said drum"—and are directed to the construction of the stemming mechanism generally.

In the second suit, against the Virginia-Carolina Peanut Picker Company, the complainant alleges infringement of claim 1 of the Ferguson-Benthall patent, as follows:

"1. A picking machine for picking nuts, etc., from the vines, consisting of a stationary picking screen for catching and holding the nuts, combined with a carrier belt for dragging the vines over the screen and a stirring device consisting of a horizontally reciprocating frame with downwardly projecting spring fingers arranged above the carrier belt to spread the vines and work the nuts through the screen."

And claims 1 and 3 of the Benthall patent, as follows:

"1. In a peanut stemmer, and in combination, a relatively long open rectangular frame, friction rollers journaled at the corners thereof, a relatively short rectangular frame resting on the rollers, the bottom of said short frame being composed of a series of longitudinally arranged transversely spaced slats, a plurality of mandrels journaled transversely of the lower frame and spaced apart from each other, spaced stemming devices secured to the mandrels, each device comprising a disk having upon the periphery thereof spaced teeth, the points of the teeth being within the circumference of the circle whose radius is equal to the distance from the center of the disk to the heels of the teeth, means for vibrating the upper frame toward and from the stemming devices, comprising a shaft journaled in the lower frame and having a cranked portion, an arm hinged to the upper frame and pivoted on the cranked portion, and means for rotating the shaft and the mandrels."

"3. In a peanut stemming device, the combination with the frame, of a plurality of mandrels journaled in the frame, stemming devices on the mandrels, each comprising a disk provided on its periphery with spaced teeth,

the points of the teeth being within the periphery of the circle whose center is the center of the disk and whose radius is equal to the distance from the center of the disk to the heel of the teeth, means for receiving the vines, and means for vibrating said receiving means toward and from the stemming devices."

And, in the third suit, against the Ferguson Manufacturing Company, complainant alleges infringement of claims 2, 4, and 5 of the Ferguson & Benthall patent, which are as follows:

"2. In a picking machine, the stirring device consisting of a frame bearing downwardly projecting fingers, combined with a subjacent carrier and a subjacent picking screen, the stirring device being provided with means for imparting a lateral motion to the same."

"4. A machine for picking nuts, pods, etc., from vines, comprising a carrier for the vines, a picking screen arranged below the carrier through which the nuts may drop while still adhering to the vines and movable brush below the screen to clean the same.

"5. A machine for picking nuts, pods, etc., from vines, comprising a carrier for the vines, a picking screen arranged below the carrier, a movable cleaner below the screen and a stirring device arranged above the carrier to work the nuts through the screen."

And claims 1 and 3 of the Benthall patent, hereinbefore set out as involved in the second suit.

Charles A. Munn and T. Hart Anderson, both of New York City, and Tazewell Taylor, of Norfolk, Va., for complainant.

George W. Ramsey and L. S. Bacon, both of Washington, D. C., and Lee Britt, of Suffolk, Va., for defendants.

WADDILL, District Judge (after stating the facts as above). The defenses to the several suits involve many charges of invalidity, the two prominent defenses, however, that apply to all the cases, being: (1) That the patents respectively are invalid because of lack of patentable novelty as shown in the prior art. (2) They deny infringement of any of the patents, and allege special objections to the several patents, as follows: To the Jones patent, (a) the invalidity thereof, because of the anticipation in the prior art by the Pope stemmer; (b) because it describes an inoperative machine; to the Ferguson & Benthall patent, (c) the invalidity thereof, because of anticipation by the prior use of the Ben Hicks machine; (d) because it describes an inoperative machine; (e) because the same was not legally issued; and to the Benthall patent, (f) the invalidity thereof, because of the anticipation in the prior art by use of the Gwaltney machine; (g) of the Ben Hicks machine; (h) of the Hundley machine; and (i) because of defective description in the application for the patent.

It will be observed that in these nine enumerations of specific objections to the three patents in suit, lettered from "a" to "i," five of them relate to lack of novelty because of alleged anticipation in the prior art, and two for failure to disclose operative appliances. They will be considered as respects each patent in discussing that general subject, leaving but two objections that need be specially considered, namely: (1) That the Benthall patent was void because of defective description in the application therefor; and (2) the Ferguson & Benthall patent was void because it described an inoperative machine, and that it was not legally issued.

It seems to the court that these specific objections are technical in character, and without merit. The Benthall patent was sworn to by the patentee, and fully set forth its purposes; and the alleged lack of oath relates to a failure to file an additional affidavit, upon the requirement of the authorities of the patent office, to amplify certain of the provisions of the claims in the patent, which being made, that office acted upon without further affidavit.

The Ferguson-Benthall patent sets forth its purposes with sufficient certainty to demonstrate its working capacity to one skilled in the art, which is what the law contemplates; and the objection to its issuance originally to the assignee, Barnes, as an entirety, instead of one-half interest therein, which was promptly corrected by the Commissioner of Patents by proper certificate, is likewise without merit, as heretofore determined by this court in overruling the demurrer in this cause.

1. Recurring now to the general defense, interposed in each of the causes, that the complainant is equitably estopped from the institution and prosecution of the same, because of its conduct in advertising the advantages of its patent, and warning others against its unlawful use by reason of alleged injunction proceedings, the claim being that the complainant had exceeded the bounds of propriety in the latter respect, and claimed more than it was entitled to in the former. While the complainant may not be entirely free from criticism in both respects, in issuing circulars tending to intimidate, and especially by threatening litigation against those supposed to be infringing upon its patent rights, and in anticipation of the action of the court in their favor, still the breach of propriety in this respect does not seem to have been sufficiently reprehensible to justify the court in denying to it its just rights under its patents.

[1] 2. As to laches, the defendants insist that under the circumstances of these causes, having regard to the alleged knowledge and opportunity of knowledge on the part of the complainant of what the defendants were doing under their patent, it was guilty of such laches in the institution of these suits as to disentitle it to prosecute the same. Undoubtedly one may so sleep upon his rights, and allow his adversary to proceed apparently in contravention thereof, as to disentitle him in equity and fair dealing to assert his conflicting claim, and in determining this question, in patent cases as well as in litigation generally, each case must be controlled by its own peculiar facts and circumstances. In other words, what may be considered grave laches in one case would not in any respect be such in another. Almost innumerable conditions would determine this question, and only under very special circumstances should the court hold one guilty of laches whose litigation was instituted within the statutory limitation, which in patent cases is six years. Act March 3, 1897, 29 Stat. L. c. 391, § 6, p. 694. The Ferguson & Benthall patent was issued on the 24th of March, 1906; the Benthall patent on the 9th of June, 1909; and the Jones patent on the 2d of September, 1909. These several suits were instituted in September, 1912, and the alleged acts of infringement were from and after July 5, 1909, which would seem clearly to indicate that the court would not be warranted in applying that doctrine; the suits having

been instituted within the statutory period, and within some three years of the alleged act of infringement.

3. Considering the validity of the patents in suit because of the lack of novelty in the several claims in issue in the Ferguson & Benthall and Benthall patents, and as containing nothing involving inventive skill or genius, but a mere aggregation of old elements, it will be observed that the defendants insist especially that the Ferguson & Benthall patent was anticipated by that of the patent of Ben Hicks, and the Benthall patent by those of P. D. Gwaltney, Ben Hicks, and John Hundley. Much consideration has been given to the subject of validity, in the light of the several patents specially enumerated, as well as others set up in the pleading, and it seems entirely clear to the court that in neither instance do the patents thus introduced as showing the prior state of the art disentitle the complainant to the benefit of its patents. The court will refer in detail only to those which are especially claimed as anticipatory of the prior art, that is, the Hicks, Gwaltney, Hundley and Pope patents, and will, in determining the validity of complainant's two patents, as well as the matter of infringement thereof, consider the several claims in said two patents together, as it will not be practicable within a reasonable length of this opinion, covering the three causes before the court, to discuss in detail the several alleged anticipatory acts and evidences of patentability or the alleged infringements.

The Ferguson & Benthall patents, and neither of the claims thereof, in suit in either the second or third of these causes, can be said to have been anticipated by the Ben Hicks machine. Nor was the Benthall patent in any of the claims thereof in suit in each of the three causes anticipated by anything contained in either the P. D. Gwaltney, the Ben Hicks, or the John Hundley patents. It is true that the Hicks and Hundley patents were for peanut pickers, and the Gwaltney for a peanut stemmer; but they consisted merely of crude and imperfect efforts to produce something that would answer the purpose desired—certainly so far as the Hicks and Hundley machines were concerned. They were of the most primitive kind, from an intelligent mechanical view, and entirely valueless from the standpoint of securing any practical results in the accomplishment of the object sought to be attained. Only one each of the two machines was built, and neither used to the extent of actually perfecting anything, though it is claimed that the Hicks machine was occasionally worked for a short time on patentee's small farm. The Gwaltney stemmer may be said to have been more mechanically built; but only one machine was made, and it, too, was found inoperative from a practical standpoint, and was quickly put aside. So far from the Gwaltney stemming machine anticipating that of the saw in claims 4 and 5 of the Benthall patent, involved in the first of these causes, the latter machine, with its saw, antedated the former. The earliest date allowable to the original Gwaltney patent is December 3, 1905, the improved Gwaltney March 22, 1906, whereas the Benthall patent was marketed as early as August, 1905, and in this respect it should be noted that the date of invention, and not the time

of application for the patent, controls.   Klein v. Russell, 86 U. S. (19 Wall.) 433, 22 L. Ed. 116.

[2, 3] As to each of these three machines, it may be said that they were never in effective and successful operation; the first two at no time, and the last, if at all, subsequent to the date of complainant's patent, and they all belong to the class of inoperative, unsuccessful, and abandoned experiments, and will not serve to invalidate patents subsequently acquired for perfected machines.   Brown v. Guild, 90 U. S. (23 Wall.) 181, 23 L. Ed. 161; American Co. v. Fiber Co., 90 U. S. (23 Wall.) 566, 23 L. Ed. 31; Deering v. Winona, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153.   Moreover, it cannot be said that the defendants have established their claim to anticipation by the prior art with the character of evidence, and that degree of certainty, imposed upon them by the law.   They bear the burden of proof, with all the presumptions against them so far as they seek by unsupported oral testimony to establish their claim of prior use.   Washburn v. Beat-Em-All, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; Mast v. Dempster, 82 Fed. 327, 27 C. C. A. 191; Buser v. Novelty, 151 Fed. 478, 81 C. C. A. 16.

The defense of prior anticipation of the art having failed, has complainant shown itself entitled to valid patents as respects the several claims in the Ferguson & Benthall patents in suit?   It seems to the court that it has; that in each of the claims hereinbefore set forth something new and useful, that required inventive skill and knowledge, has been furnished to the art in securing an effective peanut picker and stemmer.   Others, it is true, had made attempts, and some of them had almost reached the goal, but they failed, and to the patentees or their assignees has been accorded the great satisfaction of producing something that is at once effective and valuable.   It has produced something in no sense a mere aggregation of old elements, with each part performing its own function, and nothing more; but, on the contrary, a new combination of parts, coacting in the manner of the true combination to produce a new and useful result, and hence something clearly patentable.

[4] The thoughts and ideas of others, as suggested by old patents, may have been availed of, and different elements, suggested by the art embodied in prior patents, may have been included in the patent; but that will not avail the defendants as a defense, or serve to annul complainant's patents, as it constitutes no anticipation, and no defense to a claim of infringement, that one or more elements of the patented combination, or one or more of the parts of the patentable improvement, may have been found in an older patent, another in a second, and another still in a third.   It is indispensable that all of them, or their mechanical equivalents, be found in the same appliance, where they do substantially the same work, by the same means.   Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Imhaeuser v. Buerk, 101 U. S. 647, 660, 25 L. Ed. 945.   Here we have a complete appliance, made up, it may be, in part, from the use of old elements, but which produces a result due to the joint and co-operate action of all of the elements, and making at once a complete and efficient machine of great value and utility in the

large field of human endeavor, where real success has heretofore never been attained, and the commercial value of which has been readily recognized by its quickly taking the place virtually of all similar appliances theretofore.

[5] The complainant's Benthall and Ferguson & Benthall patents in suit, as respects all of the claims aforesaid, in issue in these three causes, are clearly valid, and belong to. the class of cases, not perhaps of entire novelty, so far as the end sought to be attained is accomplished, yet showing such improved advancement therein as involves mechanical skill and genius, and constitutes a distinct and positive advance in the science and art involved, resulting in bringing forth something at once workable, practicable, and of great value to its owners, and of general benefit to the public. In the light of these assured results, it will not do to say they were all readily foreseen, and easy of accomplishment. Difficulties in the light of after events generally so appear. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 434, 435, 442, 443, 31 Sup. Ct. 444, 55 L. Ed. 527; Computing Co. v. Automatic Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; Washburn v. Beat-Em-All Barbed Wire Co., 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; American Co. v. Fiber Co., 90 U. S. (23 Wall.) 566, 23 L. Ed. 161; National v. Interchangeable, 106 Fed. 693, 45 C. C. A. 544; Mahoney v. Malcolm, 143 Fed. 124, 74 C. C. A. 318; Morton v. Llewellyn, 164 Fed. 693. 90 C. C. A. 514.

4. Infringements. Coming to the alleged acts of infringement by the defendants in these several causes, the same will be considered in reference to the different specifications of infringement of the Benthall patent, set forth in the first-named cause, and of said patent, as well as of the Ferguson & Benthall patent in the last two causes, claims 4 and 5 of the Benthall patent being involved in the first cause, claims 1 and 3 of the same patent, and claim 1 of the Ferguson and Benthall patent in the second cause, and the said two claims 1 and 3 of the Benthall patent, and claims 2, 4, and 5 of the Ferguson & Benthall patent in the third cause, and they will be discussed in the order named.

First. Claims 4 and 5 of the Benthall patent in the first cause.

These two claims have been heretofore recited. Briefly, the patentee claims the peculiar and novel construction of his peanut stemming disks or saws to be a toothed disk in which the teeth have rounded or heel-like formations at their ends, which extend further outward than the points of the teeth, so that these points are in effect guarded, and thus prevented from engaging or injuring the shells of the nuts. The teeth are spaced apart at such a distance that the nuts cannot get between them, and preferably the widest portion of this space is approximately the same as the width of the teeth. The sides of the teeth are in converging relation, so as to exert a wedging action on the stems, and the front edges of the teeth are preferably straight, and the edges of the adjacent teeth meet at an acute angle.

Claim 4, a stemming device (a) comprising a disk; (b) provided on its periphery with a plurality of teeth; (c) said teeth being inclined to the radii of the disk; (d) having their front edges straight; (e) the edges of the adjacent teeth meeting at an acute angle; (f) the points

of the teeth being nearer the centers of the disks than the heels thereof; (g) the spaces between the teeth being of a width at the widest part approximately equal to that of the teeth. And claim 5, a stemming device, (a) comprising a disk; (b) provided on its periphery with a plurality of spaced teeth; (c) having straight front edges; (d) the heels of the teeth being further from the center of the disk than the points thereof, whereby they form a guard for the point; (e) the edges of the teeth meet at an acute angle, whereby to exert a wedging action.

Defendant's expert seeks to differentiate its saw from that set forth in the claims of the Benthall patent, because in the National, or Lilliston, saw of the defendant, the converging sides of the gullets do not meet at an angle, but the lower end of the gullets is slightly rounded. And he analyzes the difference in the two patents, but in the end, as the court thinks, demonstrates that the only point of difference between the two is that the apex of the gullets is rounded, and not angular; in other words, that the base of the gullets in the defendant's saw does not meet at an angle. This angular formation is not essentially different, and in the judgment of the court produces no material change in the mode of operation of the two machines. The claims of the Benthall patent in suit contemplate only that opposing straight edges of the gullet should converge towards the base of the gullets, to such an extent as to cause an effective engagement with the peanuts stemmed thereby, and this result is secured by the defendant's saw substantially as it is accomplished with the saw of the complainant. The court is convinced that the saw of the defendant's Lilliston machine conforms substantially to that of the saw of the complainant, covered by claims 4 and 5 of the Benthall patent; that the two are designed for and perform the same service in substantially the same manner, certainly so far as the result is concerned; and that any difference between them is not real, but merely colorable.

Second. Claim 1 of the Ferguson & Benthall patent, and claims 1 and 3 of the Benthall patent, are covered by the second suit.

These three claims have been heretofore recited.

The Ferguson & Benthall patent, claim 1, briefly, comprises suitable framework in which is mounted a substantially horizontally disposed picking screen. An endless chain carrier is mounted on sprockets, and this chain carrier carries at intervals transversely disposed pins; the chain carrier runs in close proximity to the upper surface of the horizontally disposed picking screen, and, in operation, the vines, with peanuts attached thereto, are fed from a trough onto the moving chain carrier, and dragged along and over the upper surface of the picking screen. Located above the carrier is a frame which the patent describes as an agitator frame. This frame is substantially parallel to the picking screen and the chain carrier which passes between the picking screen and the agitator frame. The agitator frame is provided with downwardly extending spring fingers, arranged in parallel rows, the ends of the spring fingers being closely adjacent to the carrier chains, and the slats and pins carried thereby, and in close proximity to the picking screen. This agitator frame spreads and loosens up the vines by means of the spring fingers as they are dragged by the carrier

chain between the picking screen and the ends of the spring fingers. This agitator frame moves in a horizontal plane, and laterally or transversely of the frame of the picking screen.

A critical analysis of the defendant's alleged infringing machine will show that it contains a picking screen, a vine carrier, and an agitator frame, arranged and having the same relation substantially to each other as the corresponding parts of the machine aforesaid of the Ferguson & Benthall patent; the real difference between the two being that in the former the agitator frame is so arranged as to move laterally and horizontally, while in the latter the same agitator and the spring fingers carried thereby are in a direction longitudinally, or lengthwise, of the machine. There is confessedly a difference in the direction of the horizontal reciprocation of this frame in the two machines, and in both cases is the reciprocatory a substantially horizontal one, and the results secured practically the same.

The fact that the reciprocating picker frame or agitator frame of the defendant's machine is normally inclined to a horizontal plane, and moves longitudinally, and not transversely, does not make that machine substantially a different machine from the one described in the patent in suit, as set forth in claim 1, one being in effect the equivalent of the other; and whether the agitator frame moves laterally, or longitudinally, or horizontally, is immaterial, so long as the elements are arranged and combined, and move to produce the result desired.

Considering claims 1 and 3 of the Benthall patent in the second suit, being the stemming mechanism, they consist briefly of a supporting frame supported on rollers, a reciprocating trough or frame, provided with a slatted bottom formed by longitudinally extending slats, mounted upon mandrels, arranged in a frame. And extending transversely are a group of stemming saws, there being two mandrels and two groups of saws, the saws projecting through the slats in the slatted bottom of the reciprocating trough. The trough is reciprocated by means of a crank shaft, connected by a strap or link pivotally connected to one end of the reciprocating trough. The crank shaft and the mandrels are provided with sprocket wheels, which are engaged and driven by a sprocket chain, so that as the crank shaft is rotated, imparting longitudinally shaking or reciprocating movements to the trough, the mandrels and saws are rotated in an opposite direction.

The stemming device of the defendant the Virginia-Carolina Company's machine will be found, upon careful examination into its mechanism, to be substantially like that of claims 1 and 3 of complainant's Benthall patent. There is some difference between them. In the complainant's machine, the reciprocating trough is mounted upon and supported by rollers, whereas in the Virginia-Carolina Company's machine its reciprocating stemming trough is mounted on hangers, which is the only real difference between them; though the defendant insists that in its machine is not found the long open rectangular frame as set forth in claim 1. There is undoubtedly the full equivalent of this frame in the Virginia-Carolina machine, and it relates to the same subject-matter, and the main frame of its machine corresponds in all substantial particulars to the frame of the stemming device of the Benthall

patent; and in these respects, as well as in the matter of the structures of the two machines, it contains substantially the mechanical equivalents of the other.

. Third. Claims 2, 4, and 5 of the Ferguson & Benthall patent, involved in the third suit, will now be considered; claims 1 and 3 of the Benthall patent, also in the same suit, having been reviewed in connection with the second suit, and need not be further referred to.

These several claims are alleged to have been infringed by the defendant Debnam and Ferguson, trading as the Ferguson Manufacturing Company, by their patent, designed by Finton F. Ferguson, the father of Walter C. Ferguson, the inventor of the Ferguson & Benthall patent in suit, and who, by reason of his connection with the two patents, and his relationship in question, it is charged is really engaged in furthering the infringement on the part of the defendants of the patent sold to the complainant. The three claims have been hereinbefore recited, and relate to a machine for picking peanuts, pods, etc., from the vines. Claim 2 containing briefly: (a) A stirring device consisting of a frame bearing downwardly projecting fingers; (b) a subjacent carrier; (c) a subjacent picking screen—the stirring device (a) being described as provided with means for imparting a lateral motion to it. Claim 4 of: (a) A carrier for the vines; (b) a picking screen arranged below the carrier through which the nuts may drop while still adhering to the vines; (c) a movable brush below the screen to clean the same; and claim 5: (a) A carrier for the vines; (b) a picking screen arranged below the carrier; (c) a movable cleaner below the screen; (d) a stirring device arranged above the carrier, to work the nuts from the screen.

The defendant's infringing machine, as respects these three claims, is built on different lines from those of the machine alleged to have been infringed. The picking screen instead of being flat, and supposedly substantially horizontal, is formed cylindrically or drumlike, and the carrier, instead of being a separate instrumentality, is connected to the stemming frame, which carries the drumlike picking screen, and moves in unison therewith, and the agitator with the spring fingers is curved and centrically arranged with relation to the picking screen, and parallel thereto, and, instead of being moved as an entirety, has a portion which is fixed, and another portion which is moved horizontally and laterally, and likewise the brushes which clean the screen, instead of being composed of bristles mounted on an endless carrier, as shown in complainant's patent, consist of flexible strips extending transversely beneath the picking screen, and are carried by an oscillating counterbalanced spring.

It is on these differences that the defendants rely for their defense of noninfringement of complainant's patent.

While constructed on these apparently somewhat different lines, it must be patent to a casual observer that the subject-matters of the two machines are the same, and their respective mechanisms in all essential materials one the equivalent of the other, designed for, and which produce the same result, and the variation between them perhaps being no more than would have been expected from a second

inventor who had theretofore sold a previous invention covering the same general ideas.

Having thus reviewed the several grounds of alleged invalidity of the claims in suit, of the Benthall & Ferguson and Benthal patents, and for the reasons herein stated, the conclusion that the said several claims were valid, each involving novelty and inventive genius, which had not been anticipated by the prior art, and having likewise reviewed the alleged acts of infringement by the defendants of the several claims of said two patents, alleged to have been infringed by the defendants, the conclusion of the court is that the complainant has sustained the charges of infringement by the defendants thereof. It is entirely true that the complainant has not been able to establish against the defendants that their machines in terms infringe in every instance those of the complainant, but they have established that, where said machines are not exactly the same, they are so in effect; that they were made and intended for the same purpose, to produce the same results, and constitute the substantial equivalents one of the other. Morey v. Lockwood, 75 U. S. (8 Wall.) 230, 19 L. Ed. 339; Sewall v. Jones, 91 U. S. 171, 23 L. Ed. 275; Union v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Imhaeuser v. Buerk, supra, 101 U. S. 647, 25 L. Ed. 945; Norton v. Jenson, 49 Fed. 859, 1 C. C. A. 452; National v. American, 53 Fed. 367, 3 C. C. A. 559; Standard v. Osgood, 58 Fed. 583, 7 C. C. A. 382; Crown v. Aluminum, 108 Fed. 845, 48 C. C. A. 72; Kinloch v. Western, 113 Fed. 652, 51 C. C. A. 362; Dowagiac v. Minnesota, 118 Fed. 136, 55 C. C. A. 86; Anderson v. Collins, 122 Fed. 451, 58 C C. A. 669.

[6] 5. Claims of the Jones patent. Coming to the consideration of claims 8 and 9 of the Jones patent, alleged in the first-named suit to have been infringed by the National Machine Corporation, having heretofore to this time discussed only the alleged infringement of the Benthall and Ferguson & Benthal patents, and which claims 8 and 9 are set out in the statement of facts herein, the defendant National Machine Corporation assails the validity of this patent: First, in that it contains no patentable novelty in view of the prior art, as shown by certain earlier patents; second, that it is invalid because of prior use of the machine known as the Pope stemmer; third, that it is invalid because it describes and claims an inoperative machine; and, fourth, that it has not committed any of the acts of infringement as alleged.

These defenses will be considered in the order named. Unquestionably, a patent, to be valid, must contain elements of novelty and inventive genius, and if, as claimed, the prior state of the art as shown by previous patents would demonstrate the lack of either of the two elements mentioned, the patent would fail. Defendant cites 14 previous patents, in some or all of which they say the essential elements of the claims in question have been anticipated. The court, having carefully examined all the patents referred to, and given full consideration to that subject is convinced that the claim is not well made. Indeed, practically all of the patents referred to are for machines other than peanut pickers or stemmers, and generally, certainly in so far

222 F.—59

as they relate to the material elements involved in the two claims in question, may be said to belong to a class of unsuccessful and abandoned experiments.

The second defense proves of greater difficulty. The Pope stemmer, it is true, was never patented. But that is not material if the prior machine was complete within itself, and had been in practical operation, and demonstrated its commercial value before the issuance of the Jones patent. The inventor, Pope, a witness introduced on behalf of the defendant, thus described his peanut stemmer, which shows how nearly the Jones patent in suit follows it, namely:

"A cylinder stemmer, made of 24" cast-iron pulleys by 2" face-about ³/₈ space between each pulley, driven by a belt, these pulleys sit on shafting, and using a sufficient number to make a cylinder about 4 feet long, and peanuts fed through one end of the cylinder and tailed out of the opposite end, with circular saws of the ordinary gin saw type, revolving in the space between each pulley, with a cylinder revolving in opposite direction of the same, thereby moving the peanuts about and the stems taken off as they went through the revolving cylinder."

The complainant insists that the Pope machine was but a crude effort to form a drum, arranged to rotate on an inclined axis, with saws rotating in a direction opposite to that of the drum, resulting in the production of a peanut stemmer which proved wholly inoperative, and should be placed in the class of abandoned experiments.

With this view, the court cannot agree under the evidence in this cause. It is true only one of the machines was made; but that one cannot be said to have been unsuccessful, for the undisputed testimony is that it was operated in Pope's factory for the whole season of eight months, that its use was well known, and that it may be said to have been fairly successful in the then state of the art, having successfully stemmed some 10,000 bags of peanuts, and compared favorably with the Benthall machine, save that the vines would pass through the latter stemmer with greater facility, but not performing the work with the same cleanliness as the cylinder of the Pope stemmer, and with the special objection to the Pope patent only that it would occasionally drag the peanuts, which defect, however, it was claimed was due to the fact that the pulleys used were too narrow on the face, making the space between the spokes of the pulleys and saw not of sufficient distance to avoid cracking the peanuts occasionally. The court can but believe that the Pope stemmer included in a practical way substantially every element of the Jones stemmer, comprising an inclined rotary drum suitable to work with circumferential slots in the walls thereof, and stemming saws extended through the slots into the drum, and that the same had been in actual commercial use, stemming large quantities of peanuts, some three years before the Jones patent was applied for. Prior use of a machine has always been held to anticipate and invalidate a later patent on the same device, and authorities to support that doctrine could be cited almost without number. Nor is it material that the prior invention should have been generally known, or the output used. Knowledge of its existence will be presumed.

[7] In Reed v. Cutter, 20 Fed. Cas. No. 11,645, Judge Story held a patent on a pump valve invalid on a pump including the same struc-

ture, which had been invented and reduced to practice before the date of complainant's patent, saying:

"Under our patent laws, no person, who is not at once the first, as well as the original, inventor, by whom the invention has been perfected and put into actual use, is entitled to a patent. A subsequent inventor, although an original inventor, is not entitled to any patent. If the invention is perfected and put into actual use by the first and original inventor, it is of no consequence whether the invention is extensively known or used, or whether the knowledge or use thereof is limited to a few persons, or even to the first inventor himself."

And in Coffin v. Ogden, 85 U. S. (18 Wall.) 120, 21 L. Ed. 821, Mr. Justice Swayne, speaking for the Supreme Court, held a patent on a lock to one Kirkham, who made his invention in March, 1861, to be completely anticipated and the patent void by a lock made not later than January 1, 1861, by one Erbe; the learned justice saying:

"Here it is abundantly proved that the lock originally made by Erbe 'was complete and capable of working.' The priority of Erbe's invention is clearly shown. It was known at the time to at least five persons, including Jones, and probably to many others in the shop where Erbe worked; and the lock was put in use, being applied to a door, as proved by Brossi. It was * * * tested and shown to be successful. These facts bring the case made by the appellees within the severest legal tests which can be applied to them. The defense relied upon is fully made out."

In Evans v. Eaton, 3 Wheat. 454, 4 L. Ed. 433, Mr. Chief Justice Marshall, referring to the question of originality as an element in patent law, said:

"Admitting the words 'originally discovered' to be explained or limited by the subsequent words, still, if the thing had been in use, or had been discovered in a public work, anterior to the supposed discovery, the patent is void. It may be that the patentee had no knowledge of this previous use or previous description. Still his patent is void; the law supposes he may have known it."

In Allen v. Steele (C. C.) 64 Fed. 793, Judge Buffington, in the United States District Court for the Western District of Pennsylvania, in construing the effect of a prior device on an oil pumping apparatus, stated:

"While Mr. Allen may not have known of this Shippen device, yet knowledge of it must be imputed to him, and, with this state of the art before him, he made application for the patent in controversy."

The case of Brush v. Condit, 132 U. S. 48, 10 Sup. Ct. 1, 33 L. Ed. 251, will be found especially interesting. It involved a patent on an electric lamp which had been in prior use. Mr. Justice Blatchford, speaking for the court, said:

"The case is that of the public, well-known, practical use in ordinary work, with as much success as was reasonable to expect at that stage in the development of the mechanism belonging to electric arc lighting, of the exact invention which was subsequently made by the patentee; and, although only one clamp and one lamp were ever made, which were used together two and one half months only, and the invention was then taken from the lamp and was not afterwards used with carbon pencils, it was an anticipation of the patented device, under the established rules upon the subject."

The Pope stemmer, in the judgment of the court, cannot be treated as an abandoned experiment. The machine was a complete one; there

is no element of uncertainty as to its use, and no attack made on the witnesses, nor effort to controvert what they said. Indeed, its actual parts were brought before the court; it was in successful operation, and a part of the regular equipment of the Pope factory, and used with profit; whereas, the Jones device has never been put in operation, though an unsuccessful attempt was made to build one of the machines; and the Pope patent therefore constitutes a prior dedication to the public, invalidating the Jones patent, which has never been put in use.

Considering the third and fourth objections to the machine together, that is to say, that the Jones patent is inoperative, and that there has been no infringement thereof, it will be noted that the complainant admits that the Jones patent in some respects does not present a complete appliance, but insists that the particulars in which it is alleged to be defective do not apply to its stemming apparatus, but to its picking mechanism, and hence it is immaterial here, and that the alleged defects or inoperative features would be readily observed and remedied by one skilled in the art. However this may be, the complainant has not subjected its device to the crucial test of ascertaining whether it is a workable machine or not, and admits that in some particulars it is deficient. Hence the court should not too readily allow this appliance to be made the basis of a suit for an alleged infringement against one using a patent subsequently issued, and in successful operation. Prima facie, the subsequent patent does not infringe, as the Patent Office would presumptively not have issued a patent to the defendant, covering, as complainant insists, the exact structure of its machine. Boyden Power Brake Co. v. Westinghouse, 70 Fed. 816, 17 C. C. A. 430 (C. C. A. 4th circuit), affirmed by the Supreme Court in 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; Corning v. Burden, 15 How. 252, 14 L. Ed. 683; Miller v. Manufacturing Co., 151 U. S. 208, 14 Sup. Ct. 310, 38 L. Ed. 121; Boyd v. Janesville Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973 (opinion of the lower court in 37 Fed. 887); Ney v. Ney Mfg. Co., 69 Fed. 405, 16 C. C. A. 293.

The complainant has introduced expert testimony with a view of showing that the defendant's machine as covered by the Lilliston patent, No. 1103305, of July 14, 1914, is an exact counterpart of the Jones patent, as respects the claims in question; and the defendant introduced expert witnesses who seek to discriminate between the two appliances as patented. The court is inclined to agree with complainant's expert as to the similarity of the two patents in material particulars, and undoubtedly in some respects they are, though not to the extent of justifying the court in sustaining the alleged acts of infringement complained of by the complainant under the facts and circumstances of this case. Krupp v. Midvale Steel Co., 191 Fed. 588, 112 C. C. A. 194. Where the patent claimed to have been infringed is incomplete upon its face, its efficiency as far as tested a failure, and its owner has not sought to avail himself of its advantages, and thus afford the public the benefit to which it is entitled, if it possesses the advantages claimed for it, the language of Judge Morris, in Crown Cork & Seal Co. v. Aluminum Stopper Co. (C. C.) 100 Fed. 849, is strikingly appropriate and illustra-

tive of the apparent weakness of the complainant's position here.   The learned judge said:

"It is somewhat significant, also, that the complainant has never put upon the market, or otherwise in any way used, the device described in the patent in suit. The reason for this is asserted to be that the other bottle-stopper devices manufactured by the complainant corporation, under other patents granted to Painter for other forms of stoppers, are so highly esteemed by the public that the complainant has never considered it worth while, so long as the defendant's conflicting contention had not been adjudicated, to attempt to commercially introduce this device. This nonuser would not, in my opinion, affect the legal right of the complainant to enjoy the monopoly given it for 17 years by the Painter patent, and to enforce it by the aid of an injunction, if the defendant clearly infringed; but this nonuser does give support to the contention that the Painter patent in suit was not made use of, because the device has defects which make it difficult to use commercially, and that it was not the equivalent of the defendant's device, which is free from these difficulties."

What is said there is doubly true, if the defendant's patent is invalid, as held herein, as it would in that event not form the basis of infringement.

The conclusion of the court upon the three causes is that complainant's patents referred to as the Ferguson & Benthall patent and the Benthall patent, as respects the several claims of each of said patents in suit, are valid; and that the defendants have severally infringed the same as charged in the several suits; and that, as respects the patent referred to as the Jones patent in suit, it is that the complainant is not entitled to the relief sought; that said patent had been anticipated in the prior art by the Pope machine, and that the alleged claim of infringement should not be sustained.

A decree in accordance with these views will be entered on presentation.